FILED

APR 29 2026

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | 4:26-cr-201-ZMB/SPM |
| JARVUS MOSLEY,<br>RONALD RADER,<br>DESTINY SIMS, and<br>SARA BREEDEN, | ) | |
| Defendants. | ) | |

**INDICTMENT**

The Grand Jury charges that, at all times relevant to this Indictment:

**OVERVIEW**

1. The defendants, **JARVUS MOSLEY, RONALD RADER**, **DESTINY SIMS**, and **SARA BREEDEN**, together with others, known and unknown to the Grand Jury, agreed to and did participate in a scheme to fraudulently obtain money from federally insured financial institutions by using victims' stolen checks, debit cards, and identification documents to conduct fraudulent financial transactions on the victims' legitimate accounts at those financial institutions.

**COUNT 1**
**(Conspiracy to Commit Bank Fraud: 18 U.S.C. § 1349)**

2. The above paragraphs are hereby realleged and incorporated by reference.

3. Beginning and ending at an exact time unknown, but including in or around September 2025, within the Eastern District of Missouri and elsewhere, the defendants,

**JARVUS MOSLEY,**
**RONALD RADER,**
**DESTINY SIMS,** and
**SARA BREEDEN,**

voluntarily and intentionally combined, conspired, confederated, and agreed with one another and others, known and unknown to the Grand Jury, to commit bank fraud in violation of Title 18, United States Code, Section 1344, in that they agreed to participate in scheme to defraud financial institutions, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of financial institutions by means of materially false and fraudulent pretenses, representations, and promises, all in violation of Title 18, United States Code, Section 1349.

***The Object of the Conspiracy***

4. The object of the conspiracy to commit bank fraud was to fraudulently obtain money from banks and credit unions by conducting fraudulent financial transactions using victims' legitimate accounts at those financial institutions.

***The Manner and Means of the Conspiracy***

It was part of the conspiracy to commit bank fraud that:

5. The defendants, **JARVUS MOSLEY** ("Defendant Mosley"), **RONALD RADER** ("Defendant Rader"), **DESTINY SIMS** ("Defendant Sims"), and **SARA BREEDEN** ("Defendant Breeden"), along with other co-conspirators, known and unknown to the Grand Jury, traveled throughout the country, including to the Eastern District of Missouri, for the purpose of committing bank fraud.

6. After arriving in different cities and states, conspirators broke into victims' vehicles and stole the victims' ID cards, debit cards, checks, and other items containing the victims' personally identifiable information, such as the victims' names, dates of birth, social security numbers, and addresses. The defendants and their co-conspirators referred to those materials as "pieces."

7. Conspirators primarily targeted vehicles of female victims because their plan was for female conspirators, such as Defendant Sims and Defendant Breeden, to use the pieces to impersonate the victims while conducting fraudulent financial transactions on the victims' legitimate bank and credit union accounts. The defendants and their co-conspirators referred to the conspirators who conducted the fraudulent financial transactions as "workers."

8. After conspirators stole the pieces, Defendant Mosley, either directly or through Defendant Rader, provided the "pieces" to Defendant Sims, Defendant Breeden, and other female workers. In some instances when female workers like Defendant Sims and Defendant Breeden did not resemble the victims, the female workers altered their physical appearances, such as by wearing wigs, before using the pieces to impersonate the victims.

9. Defendant Rader's primary role was that of a driver, in that he drove the female workers to banks, credit unions, and retail stores at which the workers conducted fraudulent financial transactions using the victims' legitimate financial accounts. In addition, on some occasions when the victims were males, Defendant Mosley provided the pieces to Defendant Rader so that Defendant Rader could serve as a worker and use the pieces to conduct fraudulent financial transactions on the victims' legitimate financial accounts, as well as other fraudulent transactions, such as renting vehicles in the victims' names.

10. Defendant Mosley provided Defendant Rader with instructions, such as which workers to have impersonate which victims and which banks and credit unions to take the workers to conduct fraudulent financial transactions. In addition, in some instances when the pieces did not contain information that the workers might be asked to provide when conducting fraudulent financial transactions, such as the victims' social security numbers and phone numbers, Defendant Mosley also supplied Defendant Rader and the workers with that information.

11. The types of fraudulent financial transactions that the workers conducted varied. On numerous occasions, the workers deposited one victim's stolen check into another victim's legitimate bank or credit union account and then immediately made a fraudulent cash withdrawal from that account. On other occasions, the workers made purchases at retail stores using a victim's debit card, which resulted in money being deducted from the victims' legitimate bank or credit union account. The defendants and their co-conspirators sometimes referred to those fraudulent financial transactions as "situations."

12. Oftentimes, Defendant Mosley maintained phone contact with the workers while they were in situations, including so that the workers could update Defendant Mosley regarding whether the bank and credit union employees appeared to be suspicious of the fraudulent financial transactions and of the balances in the victims' accounts. Further, after the workers successfully conducted fraudulent financial transactions, Defendant Mosley required the workers to inform him of how much money the workers had fraudulently obtained from the banks and credit unions.

13. Defendant Mosley required the workers to give him the proceeds from the fraudulent financial transactions that the workers successfully conducted, either directly or through Defendant Rader. Defendant Mosley, in turn, typically paid the workers 10% of the proceeds, and also paid Defendant Rader a portion of the proceeds for driving the workers to conduct the fraudulent financial transactions.

***Executions of the Conspiracy's Bank Fraud Scheme***

14. Defendant Mosley, Defendant Rader, Defendant Sims, and Defendant Breeden, together with others, known and unknown to the Grand Jury, successfully carried out, and attempted to carry out, the conspiracy's bank fraud scheme in numerous jurisdictions, including within the Eastern District of Missouri in or around September 2025 on the occasions and at the

federally insured banks and credit unions listed below, each of which is a financial institution within the meaning of Title 18, United States Code, Section 20:

| Approximate Date | Financial Institution (and Location) | Description of Fraudulent Financial Transaction |
|---|---|---|
| 9/29/2025 | First Mid Bank & Trust<br>Creve Coeur, MO | Defendant Breeden deposited a stolen check in the amount of $3,000 drawn on the Central Bank account of victim J.W. into the First Mid Bank & Trust account of victim K.M. and then fraudulently withdrew $3,000 from victim K.M.'s account. |
| 9/30/2025 | First Community Credit Union<br>Crestwood, MO | Defendant Breeden deposited a stolen check in the amount of $1,995 drawn on the FCB Banks account of victim J.P. into the First Community Credit Union account of victim L.V. and then fraudulently withdrew $1,995 from victim L.V.'s account. |
| 9/30/2025 | First Community Credit Union<br>St. Louis, MO | Defendant Breeden deposited a stolen check in the amount of $1,995 drawn on the FCB Banks account of victim J.P. into the First Community Credit Union account of victim L.V. and then fraudulently withdrew $1,995 from victim L.V.'s account. |
| 9/30/2025 | First Community Credit Union<br>Maplewood, MO | Defendant Breeden deposited a stolen check in the amount of $1,965 drawn on the FCB Banks account of victim J.P. into the First Community Credit Union account of victim L.V and then fraudulently withdrew $1,965 from victim L.V.'s account. |
| 9/30/2025 | First Community Credit Union<br>St. Charles, MO | Defendant Breeden attempted to deposit a stolen check in the amount of $1,945 drawn on the FCB Banks account of victim J.P. into the First Community Credit Union account of victim L.V. |
| 9/30/2025 | Commerce Bank<br>Chesterfield, MO | Defendant Sims attempted to deposit a stolen check in the amount of $1,995 drawn on the U.S. Bank account of victim M.S. into the Commerce Bank account of victim L.P. |

15. In total, through the conspiracy's bank fraud scheme, the defendants and other co-conspirators fraudulently obtained, and attempted to fraudulently obtain, tens of thousands of dollars from victims' legitimate accounts at federally insured financial institutions.

All in violation of Title 18, United States Code, Section 1349.

**COUNT 2**
**(Aggravated Identity Theft: 18 U.S.C. §§ 1028A and 2)**

16. The above paragraphs are hereby realleged and incorporated by reference.

17. On or about September 30, 2025, in Maplewood, Missouri, within the Eastern District of Missouri, the defendants,

**JARVUS MOSLEY,**
**RONALD RADER,**
**DESTINY SIMS**, and
**SARA BREEDEN,**

while being aided, abetted, counseled, encouraged, and induced by one another and others, known and unknown to the Grand Jury, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), that being conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that being the stolen Missouri driver's license of victim L.V. that contained victim L.V.'s name and date of birth, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Sections 1028A and 2.

**FORFEITURE ALLEGATION**

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Section 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1349, affecting a financial institution,

as set forth in Count 1 above, the defendant(s) shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained directly or indirectly as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property constituting, or derived from, any proceeds traceable to such violation.

2. If any of the property described above, as a result of any act or omission of the defendant(s):

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

________________________
FOREPERSON

THOMAS C. ALBUS
United States Attorney

________________________
JUSTIN M. LADENDORF #68558MO
Assistant United States Attorney